2254 case, Austin v. Hoke. Ms. Hashimoto, you're going to introduce the student? Yes. Thank you, Your Honor. Erica Hashimoto on behalf of Mr. Austin. And by prior arrangement with the court, Mr. Steven Strasburg, a third-year law student at the University of Georgia Law School, will be arguing for Mr. Austin. I will remain at council table. Yes. We're pleased to have you here and pleased to have Mr. Strasburg helping us out with this case. Thank you very much. Thank you, Judge King, and may it please the court. My name is Steven Strasburg, and I represent the appellant, Timothy Austin. This court should reverse the judgment of the district court for two reasons. First, the district court was authorized under Section 2254d-2 to reach the merits of Mr. Austin's petition because the West Virginia Supreme Court reached an unreasonable determination of fact when it considered the merits. And second, Mr. Austin is entitled to the presumption of vindictiveness because, as both parties agree, his sentence was increased after he sought mandamus relief with the West Virginia Supreme Court. Mr. Austin was originally sentenced to a one- to three-year sentence that was set to begin four months after the sentencing hearing and sentencing order were issued. Mr. Austin- In McDowell County. I'm sorry? In McDowell County, West Virginia. That's true, Your Honor. Did you go up there and take a look at McDowell County? Didn't have a chance, unfortunately. Do it today. Unfortunately, we've got a flight that we're going to have to try to catch, but I'll have to stop by sometime. We'll be doing spring break. Forty-eight days after the sentence was issued, Mr. Austin filed a Rule 35a motion seeking correction of an illegal sentence. He filed it all pro se, didn't he? He did. At various points in time, he had counsel, and at some points in time, he was filing pro se. At that point, he was pro se, Your Honor. He filed the Rule 35a motion seeking to have the sentence corrected. The judge did not act on that sentence for 48 days, at which point in time, Mr. Austin petitioned for mandamus, asking the West Virginia Supreme Court. He did that pro se, didn't he? He did. He asked the West Virginia Supreme Court to compel the sentencing judge to rule on the motion. Four days after the sentencing judge was in receipt of the petition for mandamus, he increased Mr. Austin's sentence in an amended sentencing order that referenced the mandamus petition. Under Section 2254, in order for the federal courts to reach the merits of a petition that's been considered at the state court level, Mr. Austin has to demonstrate one of two things, either clear legal error or clear factual error. There is no clear legal error alleged here, only that the West Virginia Supreme Court clearly erred factually. And the name of that court is the Supreme Court of Appeals of West Virginia. It is, Your Honor. And most everybody gets it wrong, but some of us like to hear it right. The Supreme Court of Appeals of West Virginia reached a finding of fact that, quote, it is clear from the record that the circuit court intended for the sentences to run consecutively. It is that finding of fact that is unreasonable because it is contradicted by the record evidence that was before the West Virginia Supreme Court. What they had before them was the sentencing hearing at which the sentencing judge clearly articulated his desire not to effectuate a consecutive sentence, as well as the sentencing order which set the sentence to begin in March of 2010. But the second sentencing order recited what the Supreme Court did, recited it the same way the Supreme Court did. Very similarly, Your Honor. The Supreme Court was – if they went back just to the second, the resentencing order, they could come up with that kind of language. That's true, Your Honor. You're saying what they did is they ignored what had gone on before the first sentencing order and what went on at the hearing that led to the first sentencing order, right? That's true, especially given the way that the Supreme Court of West – Now, this is a 2254 thing, and we had to review a state – we're reviewing a state court decision. Yes, Your Honor. And you think which state court decision it is we review? The Supreme Court of West Virginia, Your Honor, the Court of Appeals. And it's their finding of fact that the original intent of the judge was to implement consecutive sentences as what is unreasonable. The trial court judge in his amended sentencing order articulates that it was his original desire to effectuate consecutive sentences. But his words in the sentencing hearing as well as the original sentencing order completely contradict that indication. And it is because of that that Mr. Austin is entitled to have the federal courts review his petition on the merits. If you get beyond that, what is your argument about vindictiveness? The argument is that Mr. Austin sought appellate relief in the form of a petition of mandamus to the West Virginia Supreme Court of Appeals. So you think any time there's a filing of a writ of mandamus, that's enough? It is in this particular context. Has any court so held? No court has considered whether or not a petition for mandamus would be enough for the presumption of vindictiveness to apply. What's the difference between a writ for mandamus and a motion for reconsideration at the district – at the trial court level? The difference and the very important difference is that it's directed to an appellate court, a superior court. Whereas the petition for reconsideration or Rule 35 is directed to the trial judge himself. What about a stay to an appellate court? Motion for a stay, would that make your argument, you think? It would not, Your Honor, because a motion for a stay would – if the stay were issued, would divest the trial court of jurisdiction. And if it were not issued, then there would be no argument for vindictiveness. Mandamus is peculiar – No, no, I'm saying he thinks he has – he thinks the court's wrong, and so he moves for a stay. And then the court – the trial court then recognizes its own error. Isn't that moving to a higher court? Isn't that embarrassing to the district court? It is, Your Honor. Isn't that your argument? It's not my argument because a motion for a stay is very different from a motion – No, but I mean – wait, wait, wait, wait, wait, wait. I know there's no motion for a stay in this case. But why do you base your argument based on what factor about a Mandamus petition? The fact that specifically to this case, Mr. Austin alleged that the judge was being derelict in his duties by failing to rule. So in other words, it's not just every motion for Mandamus. You have to put some language in there that's embarrassing to the judge? The Supreme Court, in considering the presumption, has noted the importance of a posture of self-vindication. In this case specifically, Mandamus does put the judge in that posture because Mr. Austin alleged the judge was not doing his job. So you think then not every Mandamus but just some petitions for Mandamus would do it? That's true. Would you then advise – do you think every defense lawyer in every case would be advised to file a Mandamus petition to at least create that argument for his client? No, Your Honor, because – Why not? A frivolous motion or petition for Mandamus would serve no purpose because if the petition for – It might. It might get you Mandamus or at least you've established that you made that claim, although the court above didn't think it was serious. You couldn't make an argument? Although we filed it and the court didn't think it was serious, he still is mad at me and is trying to take it out on me? Wouldn't – you don't think that argument would ever be made by a lawyer? I think it could be made. I don't think it would prevail because of the way that the Supreme Court – But if you could write the right set of judges, it might prevail. It could, Your Honor. But the point is that a criminal defense lawyer can't decide what the court is going to do. A criminal defense lawyer can only make the argument for and put his client in best position to win, right? That's true. So why then wouldn't filing Mandamus be at least something to think about doing in every case to preserve that argument? Because he has a duty to the court to not make a frivolous argument. If there is a – So you think we don't get any frivolous arguments? Not that you don't, Your Honor, but the attorney is charged with not doing that. Is there any evidence in this record that this was – the resentencing – I call it resentencing, the change of sentencing – was vindictive? Evidence in the record? We offer no affirmative evidence of vindictiveness. Is there evidence in the record that it was not vindictive? No, Your Honor. And that's why the presumption is important. Well, let me ask you. Why do you make on page 15 – I can read it to you. I'm sure you know it. This was the comments at the original sentencing, I think. And the court goes, but I do think you should serve some time for it. So why doesn't that – and at that point, had the judge, let's just say for sake of arguments and your argument, followed the law correctly, the only option he had was a consecutive sentence. No, Your Honor. And the reason is that a purely concurrent sentence still would have delayed Mr. Austin's parole eligibility by one year under West Virginia law. I mean consecutive. Yes, Your Honor. I don't know what I said, but his option, if he thought you ought to serve some time, wouldn't he have had to give a consecutive sentence? No, Your Honor, because a consecutive sentence would have been an option. A concurrent sentence also would have been an option because it would have delayed Mr. Austin's parole eligibility by a year. A concurrent sentence kept him in jail longer. It would have – it might or might not have, depending on whether parole was granted. But by virtue of the way that the sentence was structured, Mr. Austin was still going to be in jail under the underlying charge. So by delaying it to March of 2010, all that that functionally did was delay parole eligibility by three months relative to a purely concurrent sentence. So, in fact, a purely concurrent sentence was closer to the judge's articulated desire than a purely consecutive sentence, which adds three years on to the maximum sentence that he would have received. Explain that to me again. How does the judge know? If the judge says, I do think you should serve some time for it, now tell me how he could assure that you would serve time for it. By issuing a concurrent sentence under West Virginia law, the minimum sentence must be reached before parole is available. So under West Virginia law, by running that sentence concurrently – before a concurrent – two concurrent sentences would have run out together. That's true, Your Honor. Because the minimum on the escape was a year. The minimum on the escape was a year. So he ran it concurrent, he had to do at least a year on the escape sentence. That's true. Under a purely – That's clear under the West Virginia law, you say? It is, Your Honor. So there was punishment under either view or under either sentence that would have been issued. What's important to note is that the intent articulated by the sentencing judge in the amended sentencing order is only relevant insofar as it's concerning the merits of the vindictiveness claim. Under 2254, all we have to demonstrate is unreasonableness of the West Virginia Supreme Court in its finding. That gets you past the fact issue. It does. But Judge Shedd's focusing on it, and I think that's the tougher one, is the vindictiveness point. If you get past the fact thing, how do you show the vindictiveness? What do you have to show? They say you have to show, I think, actual vindictiveness, and you say a reasonable likelihood. I don't understand the state's argument that you have to show actual vindictiveness either. The state's argument to me seems to be that we have to demonstrate that there has been a successful appeal in order for the presumption to ever apply. And the United States Supreme Court – There hasn't been a successful appeal. There has not been. That's true. Right. He filed a petition for mandamus. A mandamus, all they asked for in the mandamus was for him to rule. That's true. For the Supreme Court to tell him to rule. Yes, Your Honor. Well, he didn't wait for the Supreme Court to tell him. He went ahead and ruled. That's true. And he recited, I received this mandamus petition a couple days ago, and I'm going to rule on it. This is how I'm going to rule. Under the state's understanding, that would preclude the presumption from applying. But under the Supreme Court's decision in Alabama v. Smith, the Pierce presumption was refocused to require that there be a likelihood of vindictiveness. Why would we want to punish a court for getting it right as quickly as a court can? Why would we want to do that? Why would we want to wait? If a court realizes it made a mistake and there's a way to correct it, why wouldn't we want the system to work that way? So the defendants aren't chilled in exercising their right to appellate, review, and arrest. Let's just talk about who you want to throw that chill on. Isn't this an example of no deed going unpunished, good deed going unpunished? He did this in the first instance, and he may have been wrong on the law, but he did it to help your client, didn't he? You don't think that initial sentence was imposed because he wanted to hurt your client, do you? Of course not, Your Honor. He did it because he wanted to help him, didn't he? Certainly possible. You think it's just possible? It is possible. What other justification would there be? Well, he gave the justification in the sentencing hearing, that he wanted to have some punishment but that this was nonviolent. The some being not all punishment? Certainly. Is it anything other than to help your client? Maybe that doesn't factor into the legal analysis, but isn't that the case? Sure. Right. What do you want here? What's your idea of the relief you'd get? The relief is for this court to remand to the district court with instructions to enter a conditional writ of habeas corpus conditioned on the West Virginia courts not implementing the original sentence. The Supreme Court of Appeals of West Virginia. We can't tell the circuit court to do anything of West Virginia, can we? How could we do that? No, Your Honor. It would go back to the . . . We can't do it. All we can do is tell the district court to do something. You'd have the district court tell the Supreme Court of Appeals of West Virginia to do something? Not even tell them, Your Honor. It doesn't sound like it's an appeal. It conditioned their writ of habeas corpus. A re-sentence ain't a what? On the reimplementation of the original sentence. But the original sentence is the illegal sentence. Everybody says that's what I read. You say in your brief you want the original sentence, but everybody agrees that the original sentence is not permitted under West Virginia law. That's not true, Your Honor. The state contends in its brief that it's not illegal, and we are unclear as to whether it's . . . So he could have started it. That's true. Yes, Your Honor, and any motions that need to be made to determine whether or not that sentence was legal can be made. But under the Supreme Court's precedent in Milligan v. Bradley, where there's a constitutional error, the cure for that constitutional error is to reset the case to the point in time prior to the constitutional error. And in this case, that would be implementing the original sentence, and any motion practice that needs to be taken to determine the legality of the sentence can take place in the state courts at that time. Well, he then argued he had ineffective assistance of counsel who came here and asked us to impose an illegal sentence. And now he thinks it's illegal. He thought it was illegal. Yes, he did. That started everything. It did. So if we grant what you want . . . So you say it's wrong, it's not an illegal sentence. It's unclear under West Virginia law, and it was never settled. Do you think the state agrees with you on that? Yes, Your Honor.  On page 32 of their brief . . . Well, they actually talk about going back and having him re-sentenced by another judge. But the state does. They do. Wants us to tell the state of West Virginia to sign another judge. Yes, Your Honor. Now, that would be federal overreaching of the nth degree, wouldn't it? The easiest way to condition the writ is to have the state re-implement the sentence that was in place prior to the constitutional error, and that would set the case in the right posture for the state to be able to . . . Yes, Your Honor. In either way, you'd already serve it. Yes, Your Honor. So . . . Okay. But your remedy is that the federal court should basically impose an illegal sentence, a sentence that the state says is illegal and you say might be illegal. That's the remedy for the constitutional violation is to break the law in sentencing. Yes. It's not to break the law, Your Honor. I see that my time has expired. What else is it? It's not to break the law. It's to re-implement the sentence that was in place prior to the constitutional error. Right. And if that sentence is illegal, isn't that awful? No, because the West Virginia state courts can make any determinations of the legality of that sentence and alter it as needed. But I said if. I said if it's illegal, then the order would have us impose an illegal sentence on somebody. No, Your Honor. The order would have the West Virginia Supreme Court consider whether they'd like the writ of habeas corpus to go through or whether they would like to re-implement it. It would be conditioned on what? Conditioned upon the re-implementation of the original sentence. What they consider to be an illegal sentence, perhaps. If they do, any motion practice can be heard on that matter. Then the state court can take that up. Exactly. Rather than this court taking it up. That's true. Thank you. Thank you, Mr. Strasburg. And you have a few minutes left. Mr. Lynn. Good morning and may it please the court. My name is Albert Lynn and I'm here on behalf of the warden. I'd like to focus on the merits of Petitioner's claim and make three points. First, the Supreme Court's case law makes clear that the Pierce presumption applies only where there has been a successful appeal or habeas petition. Second, the successful appeal requirement is necessary because we are talking here about imposing a presumption of judicial unfairness. That is, assuming until proven otherwise that a judge has violated his oath of office and imposed an unconstitutional sentence. That is what the Pierce presumption does. And third, at a minimum, the Pierce presumption should not apply here because a petition for a writ of mandamus is not a challenge to the correctness of what the sentencing court did. And so turning to the first point, the Supreme Court's. You've given up on the fact issue. You agree that they satisfy 2254D2? No, Your Honor. Well, you went right to the vindictive. That's correct, Your Honor. I just wanted to focus the court on what we think is ultimately the dispositive. No, but if you went on the fact, we don't have to get to any of that. I mean, why would we be deciding the constitutional issue if we don't get there? That's violating contravene and ashwander. We don't want to do that. So, yeah, I think you need to tell us what your position is on that factual point. They say they got you by the facts. Of course, Your Honor. I think that you're dead wrong on the fact that the state Supreme Court, the Supreme Court of Pills, West Virginia, misapprehended the facts. Now, either you give up on that or you don't. I understand, Your Honor. But if you went on that, we don't have to worry about any PIRS issue. I understand, Your Honor. And as we said in our brief, we do not concede that point. I will start by saying— You say that the facts are consistent. And Judge Faber said— That's correct, Your Honor. —that it was factually supported. Yes. The West Virginia Supreme Court of Appeals' decision— The magistrate judge said it was not. The federal magistrate judge. That's correct, Your Honor. The West Virginia Supreme Court of Appeals' decision was not ideal, but we believe that it was not unreasonable in light of the highly deferential standard that EDPA requires. As this court knows, it's not enough that a federal habeas court would have reached a different conclusion. What is required is that there's fair support in the record. And what we will point to in the West Virginia Supreme Court of Appeals' decision that the petitioner fails to mention is that what the West Virginia Supreme Court of Appeals says is that the circuit court judge, in his second sentencing order, clarified his intent. Well, he couldn't have clarified it because he—in the first one, he didn't—he said he wasn't going to give him a consecutive sentence. And in the second one, he said he intended to give him a consecutive sentence. So the first order and the second order are inconsistent with one another. Well, what he says in the circuit court order and what the West Virginia Supreme Court notes is that in clarifying his intent, he said the following. It's the Supreme Court of Appeals of West Virginia. That's correct. And what they said that in clarifying his intent—that's a quote from the Supreme Court of Appeals' opinion—in clarifying his intent, the circuit court said the following. So what there is fair support in the record for is that in light of the petitioner's motion and the petition for writ of mandamus, and what he says, what the circuit court judge said was, I have received the following from the defendant. In light of the petitioner's motion, the circuit judge clarified his intent as wanting to impose a consecutive sentence. And we believe, the state believes, that there is fair support in the record for that. But ultimately, even if this court disagrees— Where is the support in the record that he intended to impose a consecutive sentence? Well, our point is that in light of what he received, he clarified that that's what he intended. So you put together the fact that he received this motion explaining that his original sentencing order was illegal, and you put that together with what the ultimate result would have been, which is there are two options, a purely concurrent sentence or a purely consecutive sentence. And he had said in the original sentencing order in the transcript that he wanted the defendant to have some punishment. And so given those two options, in light of the new posture that he was in— He said, I'm going to split the baby in half. I'm going to split the baby in half. Now, that seems to me to be entirely inconsistent with saying I intended to impose a consecutive sentence. That's correct, Your Honor. And the state does not—we do not disagree about what he said in his original sentencing order. He did not say in his original sentencing order that it was his intent at that time to impose a consecutive sentence. Our position is that there is fair support in the record for him to clarify his sentence in light of what he had been told by the defendant that— Where is the fair support in the record, as Judge Thacker asked you?  It's the fact that he received this motion, which he notes in his second sentencing order, and the motion explained to him the reasons why his original sentencing order was illegal. You're talking about the Rule 35 motion? That's right, the Rule 35. Not the petition for mandating it. The Rule 35 motion, right. And he looks at that, and so he notes that in his order, notes that he has looked at that, and that that has caused him to realize that his original sentencing order needs clarification. Now, perhaps that's not the best word. Perhaps he should have said it needs correction, but he said— Did it need correction? What's the state's position on whether or not the original sentence was illegal? The state's position is that it is reasonable from the face of it for the judge to believe that it needed correction. The meaning of that particular provision of West Virginia law has not been decided by the state court, by the Supreme Court of Appeals, and we do not think that that's an issue that this court needs to reach out and decide. The one on— On the concurrent versus consecutive sentence and what his options were. Okay. So that law is still up in the air? Yes. There is no controlling decision from the West Virginia— So there may be a possibility that it could split the baby? Could very well. So there is a possibility, as Mr. Strasburg argued, that the original sentence is legal under West Virginia law? That is possible, and the state has not taken the position that it is definitely illegal. Our position is that it is reasonable—it was reasonable for the circuit court judge to read the statute in that way. But ultimately— In which case it did not need to be corrected? In which case it would not need to be corrected, but there was no controlling law on the issue for him to look to, and on the face of it, it is a reasonable reading of the statute that a circuit judge only has two options. And it's also a reasonable reading that sentencing him to a consecutive sentence at that point was vindictive, if it was still up in the air, and the only thing that caused him to increase the sentence was the petition for mandamus. Then the presumption should have effect. Well, we don't disagree that it is possible to conclude that he may have been actually vindictive, only because there's no evidence one way or the other. He may not be actually vindictive. Right, but to answer Judge Sackler's question, I think— It's a reasonable likelihood, isn't it? Well, that gets us into what the factors are for imposing the Pierce presumption. I think it's important to distinguish the two here. There's the question of whether you impose the presumption, and then there's the question of whether it applies, whether the state or the defendant can then meet the burden to overcome or not the presumption. And the factors that we believe are fairly clearly articulated from the history, starting with Pierce and the remaining Supreme Court decisions, is that there needs to be a harsh sentence, number one, a harsher sentence, and there's no dispute about that here. Two, there must be a successful appeal or habeas petition, and three, and this is where the reasonable likelihood test comes in, and three, there must be circumstances that otherwise make it reasonably likely that there was actual vindictiveness. And I think you can gather that by looking at the progression of cases. You start with Pierce, and in Pierce, there was a successful appeal, and there was a harsher sentence. What about the successful appeal issue here? They say it's the mandamus petition, right? That's all they got. That's correct. And what I heard from defendants' counsel today and what I read in their briefs is they are not actually contending there is a successful appeal. They contend that there is no requirement that there is a successful appeal, and we do not believe that is supported. I thought they thought they got the mandamus petition satisfied. No, Your Honor. He asked for mandamus, and they served it on the judge, Judge Marinsky, and Judge Marinsky recited it in the first sentence of his order. He says, I got this copy of the writ, a writ of mandamus. They didn't call it a petition. He called it a writ of mandamus, and he ruled, and mandamus is to get a judge to rule, right? That's correct. So that's a success. So his paper, the petition for mandamus was 100% successful. He asked for a ruling, asked the Supreme Court to get him a ruling, and now I don't know who sent that thing to the judge, but he got it and he gave him a ruling. Respectfully, Your Honor, we would disagree with that characterization of the facts. I'm reading it. It's Judge Marinsky's order. On the 18th of October, 2010, the undersigned judge received a copy of a writ of mandamus and a proposed amending scheduling order. And then he says, I need to clarify it. It was the intent of this sentencing court that the sentence of November 12, 2009, be served consecutively. I believe that the appendix reflects that. He called it a writ of mandamus. I believe that the appendix reflects that the. He put capital W on it. The question is, was mandamus ever granted? It was not, and I believe. It was not granted, but the judge, she recited it was granted. They sent it to him. He actually, it says. And he ruled on it. Maybe we can get the judge to issue another order that said what he really meant was it wasn't a writ of mandamus, it was a motion for mandamus. Now, Judge Marinsky's a good judge. I mean, I don't know, we were up here talking about he's like doing what he's doing, but he does know what he's doing, and he's a fine judge. He's an honorable judge. Well, Your Honor, I would respect this. And that's the reason. I don't read these things that you've got to find actual vindictiveness. I think reasonable likelihood is what you recited there if there's a successful appeal. He got the, the mandamus was successful. He took it up there and filed it, and he got himself a ruling four days later or three days later. Respectfully, Your Honor, I think I would. That's about as successful as you can get. I would submit that the amended sentencing order concludes a typo. The record reflects that the writ of mandamus was not, in fact, granted. It was denied a month later. And in his sentencing order. It was denied after the ruling was made. It was. Well, it was moved in. It wasn't granted. I didn't say it was granted. I said the judge ruled on it. It was effectively granted. The judge ruled on the motion. Well, the circuit court. That's what the mandamus petition sought was a ruling on the motion. The judge had not ruled on the motion. Your opponent here filed his pro se papers, and Judge Marinsky ruled on the motion. In response to, he says, receiving a copy of a writ of mandamus. Well, with respect to Your Honor, I think there's, we would submit that there's a difference between a higher court granting a petition for writ of mandamus and actually issuing a writ directing a judge to act. And between that and a judge voluntarily deciding to act when he has received a copy of a petition for a writ of mandamus. Well, the petitioner can't have it both ways, can he? The petitioner can't say, I filed with a court, but yet the court never ruled. But just filing's enough. That's their argument. That's correct, Your Honor. And say, we filed, that's enough. But even if that's enough, we won the mandamus petition. They don't make that argument. That's correct, Your Honor. You liken, I suspect, don't you liken what happened is like the court effectively looking at a motion to reconsider? That is what we would compare it to, and that is one of the arguments that, if I had time, I would get to it today. And that raises a key case, a Supreme Court case, that the petitioner tellingly does not mention in either of his briefs. And that case is Texas v. McCullough, and it's a 1986 decision of the Supreme Court of the United States. And that is the one case in the chain of cases following Pierce in which there was not a successful appeal. In the remaining cases, there was a successful appeal, and the court has pared back the application of the presumption. But in Texas v. McCullough, that was the one case where there was not a successful appeal, and the Supreme Court of the United States resoundingly rejected the application of the Pierce presumption in that case. And what it said was the court found that the case presented, quote, no realistic motive for vindictive sentencing because, quote, unlike a judge who has been reversed on a successful appeal, the trial judge in McCullough had, quote, no motivation to engage in self-vindication. And the key point that the Supreme Court made was it declined to adopt the view that the judicial temperament of our nation's judges will suddenly change merely upon the filing of a successful post-trial motion. And that's essentially what we are talking about here. There was no successful appeal. It's a factual matter. And if we look at the defendant's briefs, the petitioner's briefs here, they are not arguing that they had a successful appeal. They are arguing that the mere filing of a petition for a writ of mandamus is enough. And so they got the filing of the petition for mandamus, and then they got the judge's reaction to it. He acquiesced in it. He ruled. They asked that he be required to rule, and he gave them a ruling. That's what they wanted. But he characterized it as a writ of mandamus in his order. I'm not going to sound like I'm making their argument, but you keep talking about the Supreme Court didn't rule on anything. Well, they didn't rule on anything until a month later when it was moot. But the judge had already ruled. And he ruled in response to the petition for a mandamus. It's as plain as black and white on the paper right here. We don't disagree, and it is a case, as Judge Shedd said, of no good deed goes unpunished. I mean, what he got here was notice that there had been a petition filed, and although the order says I have received a copy of a writ of mandamus, it goes on to say, or in the alternative, a original petition for habeas corpus. So I would submit, Your Honor, that there was a typo. I never got to that. After he got his ruling, they didn't take it up as a habeas corpus. The Supreme Court didn't. I'm only trying to point out, Your Honor, that I believe that there is a typo in the Supreme Court's order. And so the defendant's position here is that a filing is enough. A typo when he calls it a writ of mandamus? That's right. There is a missing word there. Maybe he accepted it as a writ. We don't know. The court speaks to its order. We're not allowed to rewrite them. The federal court's not allowed to rewrite the state court's order. The Circuit Court of McDowell County, you aren't either. Aren't we at, aren't we treading on interesting grounds in which we, if we read the law the way the petitioner wants it to be read and extending the law that way, we are creating a perverse incentive for sentencing judges, which is sentence to the maximum every single time you do it, every time you sentence somebody. So in case there is an appeal, you have your full range of discretion and you can't be called or presumed to be vindictive. Isn't that exactly where this line, their argument takes us? I believe that's correct, Your Honor, and I think that gets to the point. The petitioner makes a fair point, and we would not contest this, about the incentives that are created here, but we have to, when you're talking about imposing the presumption, and the Supreme Court has emphasized this, there are considerations on both sides, and, yes, there is a potential chilling effect, which is the very reason that the Pierce presumption was imposed, but you can't take the Pierce presumption and apply it to essentially every circumstance in which an appeal is noticed. If you do, then you just suggest to the court that the way you avoid being called vindictive is just get the highest sentence that's allowed under law each and every time you sentence somebody. That's correct, Your Honor. Then, if you lose on appeal, which you do, judges make errors, anything short of that, you might have to re-sentence somebody, but you won't be called vindictive in a legal sense. You might be called vindictive by the defense bar across the country, but you won't be in a legal sense. You won't have another court saying you're vindictive. Isn't that correct? That is correct, Your Honor. Has this fellow finished both sentences? I'm sorry, Your Honor? Has this fellow finished both of his sentences? Has he finished them? He has not yet, and there's some confusion now as to what his sentence is, but if we take it as to that it's been consecutive. Where does it stand right now? As it stands right now, and there's a consecutive sentence, he has not finished. What time has he got left? I don't have an answer to that for you today. The maximum sentence that he has is 18 years. Under West Virginia law, you can get one day. The sentence he's challenging here, he can only get one to three. That's right. And he was smidgely sentenced in November of 2009. That's right. That's more than three years ago. Correct. So if he did the maximum on it. Yes, he may already have his time served. Here's the thing. You say it's not clear what his sentence is. I may tell you you ain't seen nothing yet because we'll issue an opinion at some point. If we get past the presumption, let's forget presumption and argue about whether or not the mandatements haven't been filed with the Superior Court. By the way, let me add, that's why I went through the motion for reconsideration, and the other side said, no, motion for reconsideration doesn't count. And so, I didn't query what would happen if he filed a motion for reconsideration and a petition for mandamus at the same time. And the district, I mean the sentencing court reacted. But that's a question for another day. If we look at, if the presumption isn't created, or even if it is created, can we look past that to look at the record to see what, in fact, whether or not there's vindictiveness or not? Well, if the presumption applies, which we contend that it does not. I know you don't want it to, but what do we do then? What happens is, and the two leading cases are Wassman, United States v. Wassman, and Texas v. McCullough. And I see my time is about to expire. You're going to tell us what the remedy is? I was going to answer Judge Shedd's question about . . . Do that quickly, and then I think there might be another question. Sure. Can we look at the record for proof or lack of vindictiveness? Yes, you can. And in this record, do you think there's any evidence of vindictiveness? I do not. The preliminary point would be it is not the State's burden when the presumption applies to disprove vindictiveness. All we have to do is point to an affirmative statement in the record that shows that there was an objective basis for what happened here. And what we would point to is the judge acknowledging that he had received the motion and the petition for writ of mandamus, and then you can look to that. He called it a writ of mandamus. He did call it a writ of mandamus. He got the motion and the petition. He said he got a writ. And that what he received, that is the objective. So he has pointed to an objective basis. That is the objective basis because if you read that motion and you read the law, you could reasonably conclude . . . Do you make anything of his statements at the original sentencing? I'm asking that of you. Because it seems to me you look at a question of vindictiveness that follows what he did after he got some document, but I'm wondering, why don't you . . . isn't it possible to look back to see what he really did? And it may not be clear in this case. I think you . . . Can you do that? Well, I think what you are left to do, if the presumption applies, is to look at the full record and to ask yourself whether there was an objective basis in the record for the harsher sentence. And we believe here that there was and that that objective basis was the motion and the petition for a writ. Judge King, if you would like me to address the remedy, I can. Yeah, that's just what your position . . . What's the possible remedy here? Our position is that the remedy should be a resentencing. And we have suggested that a different judge be assigned to avoid the possibility of vindictiveness, which is . . . We have a right to tell a state court to assign a different judge? Well, I think what would happen . . . We've done that once in a while in the federal court for some reason or another. But here, we're talking about sending a case back to West Virginia. You need to get a different, I assume, circuit judge in McDowell County? I'm not aware of any precedent that would prohibit that. Well, sometimes isn't habeas granted? I know the answer to this because I did it. And you say to the state, relief is granted unless the court grants a new trial within 90 days. That's correct, Your Honor. And so, you would anticipate if you lost on the merits of this case and it were to go back, your remedy would be send back to the district court with instructions to grant the petition conditioned on . . . The following . . . . . . giving the trial, the court, I mean the state, 90 days to do something different, resentence or something. Resentence. That is what we think now. If they suggested it would have to be a new judge, that ought to be up to them, I think. We would, of course, submit that the petition be denied. Thank you. Thank you. Good to have you here. Mr. Schwarzberg, you get the last word. I do. Two housekeeping matters. Mr. Austin has not finished his sentence. The Department of Corrections anticipates that he'll be released in November of 2014, assuming that good time credit is awarded for the time that he's been in prison. For the escape sentence? For the combined sentences under the consecutive scheme. The way they look right now. The way that they look right now. Is it an option to let him escape again and just have everybody close the books on him? I don't think that would be a good idea. Judge Shedd, as to your concern about perverse incentives, the incentives that you articulated already exist under Pierce. If those incentives were truly problematic, applying this to the mandamus context would not create any additional . . . No, not if you read Pierce, that it only happens if you get reversed. If it's open, feel, move down, that any motion that may be seen as an action after that is vindictiveness, it is an increased incentive. No motion . . . the appellant does not argue that any motion can . . . I know that, but somebody else is going to stand right there and argue it one day. And they should be told they're incorrect, Your Honor. Pierce . . . Why should we . . . you know, they would tell us to tell you, you're incorrect. Why should we extend the Pierce presumption to a mandamus, as opposed to an actual successful appeal? Because this is not an extension. Alabama v. Smith, which is the last and definitive statement of the Supreme Court with respect to the presumption, articulates that the test is not a factual scenario, but rather the generally applicable rule, that where there is a likelihood of vindictiveness and a harsher sentence, that there is a presumption of vindictiveness. And Mr. Lynn cites to Texas v. McCullough for the proposition that that's not the case. But Texas v. McCullough did not involve an appeal to an appellate court. It simply involved a motion to the trial court, which no one contends triggers the presumption. Here, we have an appeal to the Supreme Court of Appeals of West Virginia, which I'm going to get right now, that . . . You've got a better excuse, because you're not from West Virginia. It's true. But the rest of us need to get it right. Yes, Your Honor. The rest of us . . . I'm talking about Judge Thacker and me. And me, too. And the counsel for this. If you say it wrong one more time, you're not invited to West Virginia. Here, we have an appeal to that court. And we have, as Your Honor suggested, functional success on that appeal. So, even if there is success required, that functional success that Your Honor points to, that he got precisely what he asked for in the mandamus petition, demonstrates the success that Mr. Lynn points to. And under our reading, where Alabama v. Smith requires no success, the fact that the sentencing judge acted in the same capacity, sentencing after a guilty plea, with the same sentencing considerations . . . Let me ask you this. Let me give you this scenario. A judge is sentencing somebody and wants to help that defendant as much as he thinks he can. And so, he thinks, you know, I've got to give you some time, but I'm not going to give you much. Because I like it, I'm not going to give it to you, and I don't think it serves the interests of justice. Thereafter, the defendant goes, by the way, that's an illegal sentence. You can't do it that way. And the judge goes, gosh, you know, all right, I've looked at it, and doggone it, you're right. Motion to reconsider. I can't do it that way. I wish the heck I could have, but I can't. So, I'm going to have to sentence you to more time. How does that then get twisted on another motion into us acting as if the judge is vindictive? The judge is not vindictive there for the purposes of the presumption or actual vindictiveness, because there's been no appeal to a appellate authority. Absent an appeal to the- But I'm sorry, I didn't add in and file a motion to reconsider and also file a mandamus. How does that, how under what theory or fallacy or whatever we call it do we then ascribe to that judge vindictiveness? We don't ascribe to him vindictiveness. You presume it. We have a presumption to protect the defendant's right to exercise his appellate rights. I'm saying, but under that scenario, does that presumption really make sense in the real world? It does make sense because if the mandamus petition were denied, he would not receive the presumption. It's only where the trial court judge grants the petitioner precisely what he seeks. What happens if you never get to the writ of mandamus because the judge acts on his own in the meantime? Then there's been no appeal to the higher authority. That's what happened here, wasn't it? No, Your Honor. What we have here is the appeal to the higher authority and the trial court acting where he otherwise would not- I'm saying that's in my scenario. The person files a motion to reconsider and a mandamus at the same time. And then the judge says, you know what, gosh, I wanted to help you, Frank, but I just can't do it. And gosh, you're smarter than me on that. You're a smart guy. It makes me like you even better, but under the law I can't do it. You're right. It's an illegal sentence. How does that get changed into vindictiveness under any measure? It only has changed to vindictiveness where there has not been a ruling on the mandamus petition, and then the applicant for mandamus gets precisely what he asked for, which is a recognition that he was correct, that the trial court has legally erred. I know that, but why is that under that factual scenario? How does that create vindictiveness when, in fact, on the record, the judge clearly no question wanted to help the defendant? Because the- We just presume because of a filing that the judge who wanted to help suddenly wants to hurt him? I see that my time has expired. Give us an answer to that. But here it's because the trial court judge- I would ask under my question, under my scenario, when we all agree that the judge is trying to help, the same thing would attain in my hypothetical is your argument, right? Yes, Your Honor. We all know in my hypothetical, we all know the judge wants to help. There's no question about that. But because of a filing and the judge correcting himself because he's convinced by the argument that the defendant has made, we turn that into that he's trying to hurt the defendant? I'd like to respond to that in two ways. The first is that if he agrees with the defendant, he could have ruled on the motion immediately. And second- Yeah, but that's perfection. If he does not agree with the defendant, then the defendant has spit in his face after he offered his goodwill. And there you need to have a presumption of vindictiveness so that defendants don't feel as though they need to avoid- I thought it was your position it was a reasonable likelihood. It is a reasonable likelihood of vindictiveness. That's what Alabama v. Smith looks to. Thank you, Your Honors. Thank you. Mr. Strasburg, we want to commend you for your efforts and you, Professor. It's very- we appreciate your taking on this case and filing good briefs and coming up here and making a fine argument.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker